IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| ADMIRAL INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.  EP-06-CV-0446-KC |
| | § | |
| LITTLE BIG INCH PIPELINE | § | |
| COMPANY, INC.; AVENIDA DE | § | |
| PALMS, LTD.; EPT BELLA HOMES, | § | |
| L.P.; AND ONEOK, INC. d/b/a | § | |
| TEXAS GAS SERVICE COMPANY | § | |
| | § | |
| Defendants. | § | |

## ORDER

On this day, the Court considered Plaintiff's Motion for Summary Judgment and Defendants' Responses.  For the reasons set forth below, it is hereby **ORDERED** that Plaintiff's Motion be **GRANTED** in part and **DENIED** in part.

## I.     BACKGROUND

This case involves the rights and duties of an insurance company to defend a contractor and sub-contractor in an underlying suit in a Texas state court.  Plaintiff Admiral Insurance Company ("Admiral") seeks a declaratory judgment concerning an insurance policy it issued to Defendant Little Big Inch Pipeline Company, Inc. ("LBI").  LBI claims Texas Gas Services Company, a Division of Oneok, Inc. ("Texas Gas") is also insured.  Defendants Avenida De Palmas, Ltd. ("Avenida") and Bella Homes, L.P. ("Bella Homes") (collectively "the Underlying

-1-

Plaintiffs") brought a negligence and trespass claim against LBI and Texas Gas (collectively the "Underlying Defendants") in El Paso County Court.  *See Avenida de Palmas, Ltd. & Bella Homes, L.P. v. Oneok, Inc. d/b/a Texas Gas Service Co. & Little Big Inch Pipeline Co., Inc.*, Cause No. 2006-4344.  LBI demanded Admiral defend and indemnify it, and Admiral has denied coverage.

### A.    Jurisdiction and Venue

Plaintiff Admiral is a Delaware corporation with its principal place of business in New Jersey.  Pl.'s Third Am. Compl. ¶ 1.[1]  Defendant LBI is a Texas corporation with its principal place of business in El Paso, Texas.  *Id.* ¶ 2; Def. LBI's Answer to Pl.'s Third Am. Compl. ¶ 2. Defendant Texas Gas is an Oklahoma corporation authorized to do business in Texas.  Pl.'s Third Am. Compl. ¶ 5; Texas Gas's Answer to Pl.'s Third Am. Compl. ¶ 2.  Both Defendants Avenida and Bella Homes are Texas corporations with their principal place of business in El Paso, Texas. Pl.'s Third Am. Compl. ¶ 3; Defendants Avenida and Bella Homes' Answer to Pl.'s Third Am. Compl. ¶ 1.

There appears, therefore, to be complete diversity of citizenship between Plaintiff and all

---

[1]Defendants Texas Gas and LBI each state in their answers to Plaintiff's Third Amended Complaint that they are "without sufficient information to form a belief as to the truth of the allegations set forth in paragraph 1of the Complaint and therefore, denies same."  Def. LBI's Answer to Pl.'s Third Am. Compl. ¶ 1; Def. Texas Gas's Answer to Pl.'s Third Am. Compl. ¶ 1. However, both Defendants admit that the Court has diversity jurisdiction over the instant case pursuant to 28 U.S.C. § 1332(a)(1).  Def. LBI's Answer to Pl.'s Third Am. Compl. ¶ 4; Def. Texas Gas's Answer to Pl.'s Third Am. Compl. ¶ 5.  For purposes of determining diversity jurisdiction, then, the Court will accept Plaintiff's assertion as to their place of incorporation and principal place of business as admitted.

Defendants.  Moreover, the amount in controversy in this case exceeds $75,000.[2]  The Court

therefore has subject matter jurisdiction over the instant case pursuant to 28 U.S.C. § 1332(a)(1).

Venue is also proper in this case because a substantial part of the events or omissions upon which

this claim is based occurred in the Western District of Texas, and because Defendants Avenida

and Bella Homes have their principal place of business in this District.  *See* 28 U.S.C. §

1391(a)(1)-(2).

    **B.**    **Facts and Procedure**

    Because this is a diversity action, the Court will apply the law of the state in which it sits

and in which the events at issue took place, namely Texas law.  *See Erie R.R. v. Tompkins*, 304

U.S. 64, 78 (1938).  Texas follows the "eight corners" rule of insurance contract interpretation.

*United Nat'l Ins. Co. v. Hydro Tank, Inc.*, 49 F.3d 445, 448 (5th Cir. 2007) (citing *GuideOne*

*Elite Ins. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006)).  This rule states that

"an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in

light of the policy provisions, without regard to the truth or falsity of those allegations."

*GuideOne Elite Ins.*, v. 197 S.W. at 308; *see also King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185,

188 (Tex. 2002).   The duty to defend, therefore, is determined by the allegations in the

underlying pleadings and the language of the insurance policy.  *Gehan Homes Ltd. v. Employers*

*Mut. Cas. Co.*, 146 S.W.3d 833, 838 (Tex. App. 2004) (citing *Nat'l Union Fire Ins. Co. v.*

*Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)).  If the pleadings allege

facts stating a cause of action potentially falling within the insurance policy's scope of coverage,

---

    [2]As will be explained *infra*, the amount claimed by the Underlying Plaintiffs in the
Underlying Lawsuit is $250,336 plus attorney's fees.  *See* Pl.'s Mot. for Summ. J. App. 62-67
("Underlying Pls.' Second Am. Pet.") ¶ 18-19.

the insurer has a duty to defend.  *Hydro Tank, Inc.*, 49 F.3d at 448 (citing *Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 599 (5th Cir. 2006)).  When applying the "eight corners" rule, the Court gives the allegations in the petition a liberal interpretation.  *Gehan Homes Ltd.*, 146 S.W.3d at 838 (citing *Nat'l Union Fire Ins. Co.*, 939 S.W.2d at 141).  Doubtful cases will be resolved in favor of the insured.  *Hydro Tank, Inc.,* 497 F.3d at 448 (citing *Nat'l Union Fire Ins. Co.,* 939 S.W.2d at 141).  Therefore, the facts alleged in the underlying petition against the insured are presumed to be true when gauging the insurer's duty to defend.  *Gehan Homes, Ltd.*, 146 S.W.3d at 838 (citing *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex. 1965)).[3]

Taking the facts in the Underlying Petition as true, in June 2006, Bella Homes contacted Texas Gas and requested that natural gas service be turned off to the Las Palmas Mobile Home Park, a section of real property located at 11600 Montana Avenue in El Paso ("the Property").  *See* Pl.'s Mot. for Summ. J. App. 62-67 ¶¶ 8-9 ("Underlying Pls.' Second Am. Pet.").  Bella Homes was in the process of closing down the Property as a mobile home park and converting it into a residential subdivision.  *Id.* ¶ 9.  Bella Homes at all times was acting on behalf of Avenida, who owned the Property.  *Id.* ¶ 8.

Texas Gas subsequently engaged the services of LBI to excavate and remove the gas lines from the Property.  *Id.* ¶ 10.  On June 27, 2006, LBI – acting at all times as agent for Texas Gas –

_____

[3]The parties have also stipulated that "the underlying pleadings are to be taken as true for determination of the duty to defend [and] are also "undisputed facts" for purposed of this duty to defend dispute."  Pl.'s Mot. for Summ. J. 21 ¶ 4 ("Pl.'s Proposed Undisputed Facts").

began excavating and digging up the gas lines.[4]  *Id.* ¶ 11.  In addition to digging up the gas lines, LBI also dug up concrete driveways, concrete slabs and foundations on the Property, and left a considerable amount of debris behind.  *Id.*  Some of the driveways, slabs and foundations had been constructed by Bella Homes for the new residential subdivision.  *Id.*

The Underlying Plaintiffs state that Texas Gas either misunderstood Bella Homes' instructions, miscommunicated those instructions to LBI, or LBI misunderstood Texas Gas's instructions, because at no time did Bella Homes request Texas Gas to excavate and remove the gas lines.  *Id.* ¶ 10.  Alternatively, the Underlying Plaintiffs claim either Texas Gas or LBI failed to adequately or accurately ascertain the scope of the job.  *Id.*  Regardless, the Underlying Plaintiffs claim both Underlying Defendants acted negligently in performing the work requested by the Underlying Plaintiffs.  *Id.*

The Underlying Defendants' actions ultimately resulted in damages to the Underlying Plaintiffs' overall project in constructing new homes.  *Id.* ¶ 12.  Defendants also left debris that was not the subject of their work.  *Id.*  Additionally, Defendants' actions caused the value of Plaintiffs' property to decrease.  *Id.*  Overall, the damages in question total $250,336.  Id. ¶ 14.

On October 5, 2006, Bella Homes sued Texas Gas and LBI in El Paso County Court.  *See generally Avenida de Palmas, Ltd. & Bella Homes, L.P. v. Oneok, Inc. d/b/a Texas Gas Service Co. & Little Big Inch Pipeline Co., Inc.*, Cause No. 2006-4344.  Subsequent amendments to the Underlying Plaintiffs' pleadings added Avenida as a party.  The claims ultimately included

_____

[4]LBI asserts that "[i]n order to 'cap' each of these individual gas lines, LBI needed to cut into individual driveways; driveways which TGS and LBI believed were not going to be utilized by the Bella Plaintiffs with respect to their conversion of the property into a residential subdivision."  Defs. LBI and Texas Gas's Resp. to Pl.'s Mot. for Summ. J. App. 5 ¶ 12 (Defs.' Disputed Issues of Material Fact).

negligence, trespass, and a demand for attorneys' fees.  *See* Underlying Pls.' Second Am. Pet. ¶¶ 13-19.

Admiral provides commercial liability insurance coverage to LBI under Admiral Insurance Policy No. CA000000365-05 ("The Policy").  Pl.'s Mot. for Summ. J. 21 ¶ 1 ("Pl.'s Proposed Undisputed Facts").[5]  The Policy has an effective period from August 31, 2005, to August 31, 2006.  *Id.*; *see also* App. 1-49.  LBI asserts that Texas Gas is an additional insured under the Policy.  Defs. LBI and Texas Gas's Resp. to Pl.'s Mot. for Summ. J. App. 1 ¶ 3 (Defs.' Resp. to Pl.'s Proposed Undisputed Facts).  LBI demanded that Admiral defend and indemnify LBI pursuant to the Policy.  Pl.'s Proposed Undisputed Facts ¶ 3.  Admiral denied coverage.  *Id.*

On December 29, 2006, Admiral brought the instant suit, seeking declaratory judgment as to its rights and duties to defend and indemnify LBI pursuant to the Policy.  *See generally* Pl.'s Compl. and subsequent amendments.  Admiral filed its motion for Summary Judgment November 9, 2007.

## II.     DISCUSSION

### A.     Standard

Summary judgment is required "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c) (2007); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).  The substantive law identifies which facts are material.  *See Anderson v. Liberty Lobby,*

---

[5]All references to Plaintiff's Proposed Undisputed Facts refer to facts that Defendants have not disputed.

*Inc.*, 477 U.S. 242, 248,(1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Ellison*, 85 F.3d at 189.

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact ." *Celotex*, 477 U.S. at 323; *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046-1047 (5th Cir. 1996).  If the moving party meets its initial burden, the nonmoving party "must – by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e).  The nonmovant's burden may not be satisfied by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."  *Warfield*, 436 F.3d at 557 (quoting *Freeman v. Texas Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004)).  Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)  (en banc).  Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.

### B.    Determining an "Occurrence."

Plaintiffs first argue that Defendants actions are not covered by the Policy because Defendants' actions do not constitute an "occurrence," as that term is defined in the Policy.  Pl.'s Mot. for Summ. J. ¶¶ 5-10.  The Policy contains the following relevant language:

SECTION 1 – COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1.    Insuring Agreement
       a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .
       b.    This insurance applies to "bodily injury" and "property damage" only if:
           (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
           (2)    The "bodily injury" or "property damage" occurs during the policy period; . . . .

Pl.'s Mot. for Summ. J. App. 9.

The Policy defines "Occurrence" to "mean[] an accident, including continuous or repeated exposure to substantially the same generally harmful conditions." *Id.* at 20.

Plaintiff argues that because the damage to the Property was exactly what the Underlying Defendants intended to do – namely tear up and excavate the Property in order to shut off the gas lines – then the resulting effect was a natural and probable consequence of their actions, thus falling outside of any claim that it was an accident. Pl.'s Mot. for Summ. J. ¶¶ 5-10. Defendants LBI and Texas Gas argue, however, that the Underlying Plaintiffs's allegations state that the damage caused to the Property was a result of LBI and Texas Gas negligently carrying out their orders to shut off the gas, and not a result of an intentional effort to cause the Underlying Plaintiffs' damages. Defs. LBI and Texas Gas' Resp. ¶¶ 10-11. Specifically, Defendants Avenida and Bella Homes argue the Underlying Petition demonstrates three levels of negligence: first, Texas Gas, an additional insured, was negligent in understanding these Defendants' requests and

in communicating them to LBI; second, LBI was negligent in not communicating its intentions to these Defendants prior to beginning its work, thus eliminating the opportunity to devise an alternative plan to achieve the same goal; and last, LBI was negligent in the actions it took on the Property.  Defs. Avenida and Bella Homes Resp. ¶ 11; *see also* Underlying Pls.' Second Am. Pet. ¶¶ 13-15.  Therefore, because the Underlying Defendants' actions were negligent and not intentional, Defendants in the instant suit argue the actions were accidental, and hence an "occurrence" under the Policy.    Defs. Avenida and Bella Homes' Resp. ¶ 11;  Defs. LBI and Texas Gas' Resp. ¶¶ 10-11.

There are two distinct lines of cases that deal with the terms "occurrence" or "accident" in circumstances similar to that used in the instant case.  The Court will examine each line before holding which applies.

### 1.    "The natural and intended consequences" rule

The first line of cases in this area of law demonstrate the application of the "natural and intended consequences" rule.  This rule states that "[w]here acts are voluntary and intentional and the injury is the natural result of the act, the result was not caused by accident even though that result may have been unexpected, unforeseen and unintended." *Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973) (citations omitted); *see also Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819 (Tex. 1997); *Republic Nat'l Life Ins. Co. v. Heyward*, 536 S.W.2d 549 (1976); *Wessinger v. Fire Ins. Exch.*, 949 S.W.2d 834 (Tex. App. 1997).

In *Maupin*, a construction company entered into a contract to provide borrow material from a third-party's land for use in a road improvement project on a state highway. *Maupin*, 500 S.W.2d at 633-34.  It turned out, however that the third-party did not own the land, and the true

owners subsequently brought an action against the construction company for trespass. *Id.* at 634. The construction company turned to its insurance company to defend it, which refused, prompting the construction company to sue its insurer. *Id.* The Texas Supreme Court ruled that the underlying defendant's removal of material from another's land was intentional and deliberate, and because the underlying plaintiffs brought their action as an intentional tort, the insurer had no duty to defend the prior suit. *Id.* at 636. That the construction company was mistaken as to the true of owner of the land, and that it had no intention of doing harm to the true owners, were not material to the issue of whether the act was an accident or not. *Id.* at 635. "Respondents did exactly what they intended to do . . . . The fact that they were unaware of the true owner of the property has no bearing upon whether the trespass was caused by accident." *Id.*

Later, in *Heyward*, the Texas Supreme Court held that an insured's injuries are accidental:

> if from the viewpoint of the insured, the injuries are not the natural and probable consequence of the action or occurrence which produced the injury; or in other words, if the injury could not reasonably be anticipated by insured, or would not ordinarily follow from the action or occurrence which caused the injury.

*Heyward*, 536 S.W.2d 549, 557.

Earlier, the court noted that:

> An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds. On the other hand, an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of such means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, is produced by accidental means. It is produced by means which was neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means.

*Id.* at 555 (Tex. 1976) (citing *Int'l Travelers' Ass'n v. Francis*, 23 S.W.2d 282 (Tex. 1930) (citation omitted)).[6]

The "natural and probable consequences" language surfaced again in *Cowan*, when a photo lab clerk showed copies to his friends of revealing photos that a customer had delivered to the lab for development.  *Cowan*, 945 S.W.2d at 821-22.   The customer sued the clerk and his insurer, alleging, among other things, negligence and gross negligence.  *Id.* at 821.  The court found that the clerk was not covered by his insurer – whose definition of "occurrence" is almost identical to that of the instant case – because the clerk intentionally made copies of the customer's photographs and showed them to his friends.  *Id.* at 827-28.  Relying on *Maupin*, the *Cowan* court stated that the fact that the clerk "did not expect or intend [the customer] to learn of his actions is of no consequence to our determination of whether his actions were an 'accident.'"  *Id.* (citing *Maupin*, 500 S.W.2d at 635).  Once again, the court found no accident because the underlying defendant had done "exactly what he had intended to do[.]"  *Id.* at 827.

The *Cowan* court also relied on *Heyward* for the conclusion that the clerk's conduct was not an accident because the customer's injury – the invasion of herprivacy – is of a type that "ordinarily follows" from the clerk's conduct, and the injuries "could reasonably have been anticipated from the use of the means, or an effect" the clerk could be charged with.  *Id.* at 828

---

[6]The Court notes that the factual situation in *Heyward* has little resemblance to the instant case.  In *Heyward*, the insured was the injured party, his injuries were caused by the intentional conduct of a third party, and the court's ultimate holding was that such conduct could nonetheless be accidental "if from the insured's viewpoint his conduct was not such as to cause him to reasonably believe that it would result in his injury."  *Heyward*, 536 S.W.2d at 551-52, 557-58.  Nevertheless, the Court finds the language regarding the natural and probable consequences of intentional conduct to be instructive to the instant case.  As the Texas Supreme Court stated in *King*, *Heyward* and related cases "are relevant because they address the ultimate issue of whose standpoint should be used to determine if there has been an accident."  *King*, 85 S.W.3d at 189.

(citing *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 377 (Tex. 1993) (quoting *Heyward*, 536 S.W.2d at 555-56)).  The Court rejected, however, the insurer's argument that any deliberate act could not be found to be a negligent one, and held that "negligent acts of the insured causing damage which is undesigned and unexpected" may remain covered.  *Id.* (quoting *Massachussetts Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396, 400 (Tex. 1967).[7]

Finally, in *Wessinger*, a Texas appellate court held that no accident had occurred when a man got drunk and repeatedly punched his drinking partner in the head, causing severe injuries. *Wessinger*, 949 S.W.2d at 835.  The *Wessinger* court identified the "natural and probable consequences" test outlined in *Maupin*, *Heyward*, and *Cowan* as a two-part analysis:

> First, we determine the specific "acts" alleged to be the cause of the plaintiff's damages and then whether the acts were "voluntary and intentional."  If we determine that the acts that produced the alleged injuries were committed involuntarily and unintentionally, our inquiry stops there because the results of the acts would be accidental.  But if we determine the acts were committed voluntarily and intentionally, we must then decide under the *Argonaut* definition whether the injuries were a "natural result" of the acts.
>
> When a result is not the natural and probable consequence of an act or course of action, it is produced by accidental means.  The natural result of an act is the result that ordinarily follows, may be reasonably anticipated, and ought to be expected. This standard is objective.  A person is held to intend the natural and probable results of his acts even if he did not subjectively intend or anticipate those consequences.

*Id.* (citations omitted).

In *Wessinger*, the victim brought the suit as a negligence claim, and both underlying parties styled the attack as accidental.  *Id.* at 837.  Nevertheless the court held no accident occurred within the terms of the insurance policy because it was undisputed that the underlying

---

[7]See also the Court's discussion of the *Orkin* line of cases *supra*.

defendant's decision to make a fist and strike the underlying plaintiff was "volitional and intentional." *Id* at 838. Even with the existence of evidence that the attacker may have lacked the subjective intent to injure the victim, the court held that "under the *Argonaut* analysis we look only to objective evidence: thus, [the attacker's] subjective intent cannot create a fact issue." *Id.*[8]

### 2.     The "unintended consequences of a negligently-performed act" rule

The second line of Texas cases in this area of law follows the rule set out in *Massachusetts Bonding & Insurance Company v. Orkin Exterminating Company*, which states that an "accident" "include[s] negligent acts of the insured causing damage which is undesigned and unexpected." *Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396, 400 (Tex. 1967) (citations omitted). In *Orkin*, the underlying plaintiff sued the underlying defendant for damages arising from the application of a pesticide to the underlying plaintiff's rice fields and rice mill facilities. *Id.* at 397. A jury in the underlying suit found the defendant negligent in the application of the pesticide to the rice and such negligence was the proximate cause of damage to the rice. *Id.* When the underlying defendant sued its insurer for reimbursement, the *Orkin* court held that because the jury in the underlying suit had found negligence – as opposed to gross negligence – the damage was an accident, and thus covered by the insurance policy. *Id.* at 400-01.

Later cases have expanded on the *Orkin* decision, holding that the terms "accident" and

---

[8]Other cases that have applied the *Maupin/Heyward* analysis include, e.g., *Mid-Century Ins. Co. v. Lindsey*, 997 S.W.2d 153 (Tex. 1999) (because there had been no intent to harm, nor was it "reasonably foreseeable" that harm would occur, an "accident" occurred when child climbed into insured's truck through a window and unintentionally touched a loaded shotgun, causing it to fire and strike victim); *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 377 n. 2 (Tex. 1993) (holding that transmitting herpes is not a natural result of engaging in sexual intercourse when the infected party is not experiencing any symptoms of the disease).

"occurrence" include damage that is the "unexpected, unforeseen or undesigned happening or consequence of an insured's negligent behavior." *Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 725 (5th Cir. 2000) (citing, e.g., *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 395 (5th Cir. 1995); *Hartford Cas. Co. v. Cruse*, 938 F.2d 601, 604-05 (5th Cir. 1991)). The definition of "accident" also included claims for defective performance and faulty workmanship. *Id.* Finally, damage "wreaked upon the work product of a third-party–as opposed to that of the insured–is presumed to have been unexpected and therefore, constitutes an accident or an occurrence." *Id.* (citations omitted).

In *Grapevine Excavation*, the Fifth Circuit held that a subcontractor was covered under its insurance policy when it negligently performed its contract of excavation, backfilling and other work in connection with the construction of a parking lot. *Id.* at 730. Looking to the most recent amended complaint in the underlying lawsuit, the court noted that the underlying plaintiff had alleged acts of negligence, namely causing "undesigned and unexpected" damage "by virtue of failing to install the correct select fill," and thus "*negligently* damaged the work of the [underlying plaintiff's] paving contractor." *Id.* at 726 (emphasis in original). Such actions, the court reasoned, constituted an accident and raised a duty to defend under the insurer's policy. *Id.*

The Fifth Circuit, in *Grapevine Extraction*, looked at both the *Maupin* and *Orkin* lines of cases and held that the two were not incompatible:

> We perceive a clearly reconcilable dichotomy, not a tension, resulting from the distinction between the *Maupin* and *Orkin* lines of Texas cases: In the former, the damage-causing acts of the tortfeasor are either actually or legally deemed to be intentionally harmful; in the latter, the acts that are performed intentionally are not intended to cause harm but do so as the result of negligent performance of those acts. As in the instant case, both types of tortious acts frequently occur in the performance of a contract; the difference lies in the way that the obligor performs.

-14-

An obligor who intends his performance to result in damage-or, one who commits an act that is legally deemed to constitute an intentional tort-is a *Maupin* tortfeasor. On the other hand, an obligor who intends his performance to be correct, but who negligently falls short of the appropriate standard and causes unintentional damage, is an *Orkin* tortfeasor. Had the only allegations against GEI accused it of knowingly and willfully choosing and using the substandard material that damaged the paving, and doing so to cut corners or gain unearned profit, GEI would be a *Maupin* tortfeasor. As T&S's allegations against GEI include negligence, however, GEI is an *Orkin* tortfeasor.

*Id.* at 729-30; *see also Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 473 (5th Cir. 2001) ("[i]f the act is deliberately taken, performed negligently, and the effect is not the intended or expected result had the deliberate act been performed non-negligently, there is an accident.").

Finally, the Texas Supreme Court has further defined the terms "occurrence" and "accident" in *Lamar Homes, Inc. v. Mid-Continent Casualty Company*. --- S.W.3d ---, No. 05-0832, 2007 WL 2459193, at *1 (Tex. Aug. 31, 2007). In *Lamar Homes*, the court held that a builder's allegedly defective construction or faulty workmanship in a house foundation it had built may be an "occurrence" as defined in the insurance policy. *Id.* at *1. The *Lamar Homes* court held that because the complaint alleged the defective construction was a product of negligence and because no one claimed the underlying defendant "intended or expected its work or its subcontractors' work to damage the [underlying plaintiff's] home," the damages were an "occurrence" and thus covered in the policy. *Id.* at *5. The *Lamar Homes* court recognized the *Maupin* and *Orkin* lines of cases, and added that an accident is "generally understood to be a fortuitous, unexpected, and unintended event" as well as "that which occurs not as the result of natural routine, but as the culmination of forces working without design, coordination, or plan." *Id.* (citations omitted). The court found that "at bottom, an occurrence is simply an unexpected

-15-

consequence of an insured's act, even if due to negligence or faulty work." *Id.* at *4 (internal citations omitted).

### 3. Negligence v. intentional tort

As the above-cited cases demonstrate, the dispositive issue in the instant case is whether the Underlying Defendants acted negligently or committed an intentional tort. If the Underlying Defendants' actions were negligent, then the Court will follow the *Orkin* line of cases and hold that the purported damages to the Underlying Plaintiff's Property were an accident, and hence an occurrence for purposes of this case. If, however, the Underlying Defendants' actions constitute an intentional tort, then the court will follow the *Maupin* line and hold that those actions were not an occurrence and outside the Policy.[9]

The Court holds that the Underlying Petition adequately alleges facts that demonstrate a claim of negligence in the Underlying Suit. Accordingly, the Court will follow the *Orkin* line of cases and hold that an "accident" occurred in this case, thus falling within the confines of the Policy.

The Underlying Petition in the instant case states that "Bella contacted Texas Gas and requested that natural gas service to the Property be turned off at the street." Underlying Pls.'

---

[9]That the Underlying Plaintiffs style their actions as one tort or another does not change the nature of the tort any more than negligence claims changed the nature of the intentional torts in *Cowan* or *Wessinger. See Cowan*, 945 S.W.2d at 821; *Wessinger*, 949 S.W.2d at 838. "In reviewing the underlying pleadings, the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchant Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997) (per curiam); *see also Cowan*, 945 S.W.2d at 829; *Tealwood Constr., Inc. v. Scottsdale Ins. Co.*, No. 3:02-cv-2159, 2003 WL 22790856, at *6 (N.D.Tex. Nov. 19, 2003) ("The use of legal legerdemain or mere characterization of an act as negligence does not overcome the basic facts underlying the claims and thus compel coverage.").

Second Am. Pet. ¶ 9.  Subsequently, and upon on a mistaken understanding or belief as to the extent or nature of the requested project, "Texas Gas did engage Little Big Inch to excavate and remove the gas lines from the Property." *Id.* ¶ 10.  Following its instructions, "Little Big Inch began excavating and digging up gas lines.  In addition to digging up gas lines, Little Big Inch also dug up concrete driveways, concrete slabs and foundations present on the Property, leaving a considerable amount of debris behind." *Id.* ¶ 11.

Sometime during these events, either Texas Gas or LBI made a mistake.  The Underlying Plaintiffs allege that "either Texas Gas Service misunderstood Plaintiff's instructions, or miscommunicated those instructions to Little Big Inch.  Alternatively, Little Big Inch misunderstood Texas Gas Services' instructions.  Alternatively, either Texas Gas and/or Little Big Inch failed to adequately or accurately ascertain the scope of the job." *Id.* ¶ 10.  The Court construes these statements as factual allegations that demonstrate one of the Underlying Defendants failed to properly perform a duty that it had undertaken and did so in a negligent manner.  Regardless of the intentional and volitional acts that follow, this demonstrates that at some point after agreeing to undertake the job, one of the Underlying Defendants performed a negligent act that ultimately resulted in the damages claimed by the Underlying Plaintiffs.

The instant case is distinguishable from *Maupin*, where the trespass involved a mistaken belief as to the true owner of the property from which he took borrow material.    *Maupin*, 500 S.W.2d at 633-34.  While the mistake in *Maupin* involved a factual predicate of the underlying defendant's actions, there was no allegation that the underlying defendant negligently arrived at that mistaken belief or negligently communicated its belief to another.  In the instant case, the alleged facts state that Avenida and Bella Homes gave Texas Gas a job to do, and Texas Gas and

LBI negligently performed that job by mistaking its scope.  The Underlying Plaintiffs also allege negligent miscommunication in the instant case, allegations that are absent in *Maupin*.  While LBI may have fully intended to excavate and remove the pipes, either LBI or Texas Gas negligently arrived at believing that such was their marching orders from the Underlying Plaintiffs.  Therefore, a case in negligence is proper.

The instant case is also distinguishable from *Cowan*, where the underlying defendant clearly understood and *intended* to copy the revealing photos without permission, though he later claimed not to understand the full nature of the damage it would cause.  *Cowan*, 945 S.W.2d at 827-28.  In the instant case, however, Texas Gas and LBI negligently believed they were acting *with* the underlying plaintiff's permission.  Moreover, in *Cowan*, the mistake was as to ascertaining the consequences or results, whereas in the instant case, the mistake was as to the factual predicates of the task, a conclusion negligently arrived at.

Synthesizing these cases and applying the framework set out in *Wessinger*, the facts indicate that Texas Gas or LBI unintentionally misunderstood the nature of the job it was required to do.  One of the two companies failed to listen, comprehend or perform what the Underlying Plaintiff requested.  As such, it created an inadvertent and unexpected result – a work product wholly to the dissatisfaction of the Underlying Plaintiffs.  While the end result may be a natural and probable consequence of intentionally excavating pipes across the Underlying Plaintiff's Property, it may not be a natural and probable consequence of following the Underlying Plaintiffs' instructions, which Texas Gas and LBI set out to do.  Therefore, such actions are negligent, and their results are an accident under the Policy.

The Court does not dispute that either Texas Gas or LBI committed an intentional tort by

entering on the Underlying Plaintiffs' land without permission.  Neither Texas Gas nor LBI ever

had permission to enter onto Avenida's property, and when they did so, they committed a

trespass.[10]  *See Maupin*, 500 S.W.2d at 634.  With regards to those actions, their "subjective

intent or awareness of the property's ownership is irrelevant."  *See Cowan*, 945 S.W.2d at 827;

*Brannon v. Gulf States Energy Corp.*, 562 S.W.2d 219, 224 (Tex. 1977) (one who mistakenly

claims superior title to land may nonetheless be a trespasser in good faith); *McDaniel Bros. v.

Wilson*, 70 S.W.2d 618, 621 (Tex. Civ. App. 1934) (trespasser is liable without reference to

negligence and "the intent or motive prompting the trespass is immaterial").

　　　Nevertheless, what Plaintiff Admiral fails to acknowledge is the underlying negligent

decision made by one of the two Underlying Defendants, namely to proceed with an excavation

plan not authorized by the Underlying Plaintiffs.  Such a decision, well-pleaded in the Underlying

Petition, provides a cause of action for an "occurrence" under the Policy.  Since both an

intentional tort and negligence appear adequately pleaded in the Underlying Petition, Plaintiff

Admiral has a duty to defend both.  *See Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261

F.3d 466, 474 (5th Cir. 2001) (citation omitted) ("If an insurer has a duty to defend any portion of

a suit, the insurer must defend the entire suit."); *see also Smith v. McCarthy*, 195 S.W.3d 301,

308 (Tex. App. 2006) (citations omitted).[11]

---

[10]The Underlying Plaintiffs admit as much in their Underlying Petition when they claim those same actions previously characterized as negligence also as trespass, arguing that "[n]either Defendant was authorized to enter upon Avenida's Property, much less authorized to tear up that Property."  Underlying Pls.' Second Am. Pet. ¶ 17.

[11]At the very least, the facts in the Underlying Petition demonstrate that *may* have been negligent in their understanding with regards to the Underlying Plaintiffs' instructions.  And "in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the

In conclusion, the Court holds that the Underlying Petition adequately pleads facts that demonstrate that either Texas Gas or LBI acted negligently in carrying out the orders of the Avenida and Bella Homes in turning off the gas on the Property.  Moreover, from their viewpoint, the results were unintended, because they were contrary to the instructions of the Underlying Plaintiffs.  Accordingly, such actions constitute an "occurrence" as defined in the Policy Admiral issued to LBI.

### C.      "Diminution in Value" as "Property Damage"

Plaintiff Admiral next argues that the Underlying Defendants' actions that resulted in a "diminution in value" are not covered under the policy because Texas law does not recognize economic damages as "property damage."  Pl.'s Mot. for Summ. J. ¶ 11.  Defendants Texas Gas and LBI argue, however, that Plaintiff erroneously understood the Underlying Plaintiffs' claims to be seeking "purely economic damages" while ignoring that the "diminution in value" claim is directly tied to and arises from the physically-injured tangible property.  Defs. Texas Gas and LBI's Resp. ¶¶ 12-14.

The Policy states the following:

> 17.   "Property Damage" means:
> a.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b.    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

---

action, such doubt will be resolved in insured's favor."  *Nat'l Union Fire Ins. Co.*, 939 S.W.2d at 141 (quoting *Heyden Newport Chem. Corp. v. S. General Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)).

Pl.'s Mot. for Summ. J. App. 20.

The Underlying Petition alleges that LBI dug up gas lines, concrete driveways, concrete slabs and foundations on the Property.  Pls.'Second Am. Pet. ¶ 11.  LBI also left a "considerable amount of debris behind." *Id.* ¶ 11.  The Underlying Plaintiffs claim these actions resulted in "damages to its property" as well as "damages to its Project" to build new homes on the Property. *Id.* ¶ 12.  Moreover, the Underlying Plaintiffs claim Texas Gas and LBI's actions  "caused Plaintiffs to incur significant expense to restore the Property to its initial state," "caused the value of all of Plaintiffs' Property to decrease" and "caused a diminution in value of the remainder of the Property."  *Id.* ¶¶ 12, 14.

The Court holds that the Underlying Plaintiffs have sufficiently pleaded "property damage" with regards to the destruction of the concrete driveways, concrete slabs and foundations on the Property.  Moreover, the left-over debris on surrounding land also represents "property damage" pursuant to the Policy.  Absent a relevant exclusion, Plaintiff Admiral is required by the Policy to defend the Underlying Plaintiffs against claims regarding this damage, as this damage was caused by an "occurrence."

With regards to the allegations that the Property suffered a "diminution in value," the Court recognizes these as allegations of economic damages caused by the Underlying Defendants' negligence.  Texas law does not recognize purely economic damages as coming within the definition of "property damage" in standard liability insurance policies.  *See Lamar Homes*, 2007 WL 2459193, at * 6 ("faulty workmanship that merely diminishes the value of the home without causing physical injury or loss of use does not involve 'property damage.'"); *Great American Lloyds Ins. Co. v. Mittlestadt*, 109 S.W.3d 784, 788 (Tex. App. 2003) (diminished property value

stemming from negligently constructing a home on encumbered property was an economic loss and not a "loss of use" and hence outside the definition of "property damage"); *Gibson & Assocs., Inc. v. Home Ins. Co.*, 966 F. Supp. 468, 474 (N.D. Tex. 1997) (loss of business by shop owners due to street closing for upgrades on city property are economic losses and not "property damage"); *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 737 (Tex. App. 1996) (pre-existing drainage and foundational problems in home that were misrepresented by the underlying defendants at the sale of home are economic and not property damage) ; *Terra Int'l, Inc. v. Commonwealth Lloyd's Ins. Co.*, 829 S.W.2d 270, 273 (Tex. App. 1992) (inclusion of land by defendants in county flood control district after sale, resulting in diminished value of land, was purely economic and not "property damage"); *Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 156 (Tex. App. 1990) (lost investments, subscription funds, profits and other benefits caused by false representations are economic losses and not the "loss of use of tangible property"); *Lay v. Aetna Ins. Co.*, 599 S.W.2d 684 (Tex. App. 1980) (no cause of action against an insured for loss of use of "tangible property," when insured delayed well production and allowed oil to be lost to adjacent wells).

However, the Court found no cases that dealt with a situation where the insured entered on the underlying plaintiffs' land and caused physical damage to the subject of the contract *and* diminished value to the surrounding land, also belonging to the underlying plaintiff.  In other words, the cases above dealt with purely economic damages and not consequential economic damages resulting from physical property damage.  The question remains, then, whether the economic loss or diminution in value of land caused by adjacent property damage is itself "property damage" pursuant to the Policy.

The "economic loss rule" "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes*, 2007 WL 2459193, at *8 (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494-95 (Tex. 1991)). "Its focus is on determining whether the injury is to *the subject of the contract itself*." *Id.* (emphasis added). "In operation, the rule restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of the contracting party's negligence." *Id.* (citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)). However, the economic-loss rule "is not a useful tool for determining insurance coverage." *Id.* "It is a liability defense or remedies doctrine, not a test for insurance coverage." *Id.* (citing *Ferrell v. W. Bend Mut. Ins. Co.*, 393 F.3d 786, 795 (8th Cir. 2005)). Given this language in *Lamar Homes*, the Court holds that consequential economic losses or diminution in the value of adjacent land stemming from cognizable property damage is not barred by economic-loss rule, because it relates to "other property" and is not the subject of the contract itself. Moreover, Texas Gas and LBI should not be barred from seeking coverage because part of its losses are economic. *See Gibson & Assocs., Inc.*, 966 F. Supp. at 477 (holding that financial losses stemming from loss of use of property not physically injured may be property damage pursuant to policy and collecting cases from other jurisdictions).

In the instant case, the land alleged to have diminished in value is not the subject of the contract, i.e. the land on which the gas pipes stood that were negligently excavated. Rather, it is the surrounding property that was diminished in value due to the Underlying Defendants' actions. The Underlying Plaintiffs state that in the process of negligently performing their work, the

-23-

Underlying Defendants heaped upon the surrounding land unwanted debris and refuse, "which caused Plaintiffs to incur significant expense to restore the Property to its initial state" and caused "a diminution in value of the remainder of the property." Pls.'s Second Am. Pet. ¶ 14. The Court holds therefore that these factual allegations adequately allege "property damage" to the Underlying Plaintiffs' surrounding land, as defined in the Policy, and are not barred by the economic-loss rule.[12]

### D.    Other Exclusions Under the Policy

Plaintiff next argues that "[e]ven if this Court decides that an 'occurrence' is alleged by one of the Underlying Petitions, exclusions apply." Pls.' Mot. for Summ. J. 7. Once the insured meets its burden to show that the alleged facts in the petition state a potential claim, the insurer then bears the burden of showing that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of all claims, also within the confines of the eight corners rule. *See Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 350 (5th Cir. 2005) (citation omitted). Plaintiff Admiral claims four exclusions apply. The Court will look at each exclusion in turn.

### 1.    Exclusions "j.(5)" and "j.(6)"

Plaintiff Admiral first argues that exclusions j.(5) and j.(6) apply because the alleged damages occurred simultaneously with the work and apply directly to the work. Pl.'s Mot. for

---

[12]It is also interesting to note that in an admiralty case where the Supreme Court announced what came to be known as "the economic-loss rule," the Court stated that such a rule applied only where there were purely economic losses and no additional damage to other property. *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 867 (1986). The Supreme Court, added that "[i]n the traditional 'property damage' cases, the defective product damages other property." *Id.*; *see also Assoc. Metals & Minerals Corp. v. Alexander's Unity MV*, 41 F.3d 1007, 1014 (5th Cir. 1995) (declining to extend the economic-loss rule in *East River Steamship* to preclude a tort claim for damaged cargo because a contract action may also exist).

Summ. J. ¶¶ 13-16.   Plaintiff Admiral also argues that all of the alleged property damage can be restored, replaced or repaired by fixing the allegedly inadequate work performed.  *Id.*  Defendants Texas Gas and LBI argue, however, that the debris was left on the Underlying Plaintiffs' Property after the work was concluded.  Defs. Texas Gas and LBI's Resp. ¶¶ 15-16.   Defendants Texas Gas and LBI also argue that the remainder of the Property cannot regain its value by restoring Defendants' gas pipeline work.  *Id.*  Finally, Defendants Avenida and Bella Homes argue that the policy exclusions do not apply because the Underlying Defendants were not supposed to be on the property at all.[13]

The Policy states that it "does not apply" to "Property Damage" to:

(5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Pl.'s Mot. for Summ J. App. 11.

The term "your work" is defined as "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations."  *Id.* at App. 21.[14]

---

[13]The rest of Defendants Avenida and Bella Homes' arguments with respect to the Policy Exclusions are partially incoherent and almost wholly conclusory in nature.  They provide little if any guidance on how to address Plaintiff Admiral's arguments.

[14]The term "your work" also includes

> (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work," and
> (2) The providing of or failure to provide warnings or instructions.

Giving the exclusion its plain meaning,[15] the use of the present tense indicates that exclusion j.(5) applies only to property damage arising while the Underlying Defendants are currently working on a project. *See Lamar Homes*, 2007 WL 2459193, at *8 (citing *Lennar Corp. v. Great American Ins. Co.*, 200 S.W.3d 651, 686-87 (Tex. App. 2006).

Exclusion j.(5) clearly applies to the damage caused by Defendant LBI excavating the gas lines, destroying the foundations and concrete slabs, and piling up the leftover debris. Such damage occurred on the real property that LBI was working on, and the damage occurred while LBI was performing operations and arose out of its operations.

Defendants' argument that the leftover debris is damage created after the Underlying Defendants' performance ignores reality. Those piles of debris were created during the Underlying Defendants' negligent performance of its contractual duties and did not suddenly spring into existence, fully formed, sometime later. Moreover, even though the Underlying Plaintiffs allege that the leftover debris "was not the subject of Defendants' work[,]" such a claim is more a legal argument than an alleged fact. The Underlying Petition states that Texas Gas or LBI heaped large amounts of debris around the project. Underlying Pls.' Second Am. Pet. ¶ 11. As Defendant created the heaps to get to the gas lines and placed the heaps where they ended up, these heaps are as much a "subject of Defendants' work" as anything else in the project.

Moreover, even assuming this property damage does not fall under Exclusion j.(5), they

---

*Id.*

[15]"If an insurance policy is expressed in unambiguous language, its terms will be given their plain meaning and it will be enforced as written." *V.L. Props., Inc. v. Allegheny Underwriting Risk*, 130 Fed. App'x 675, 676 (5th Cir. 2005) (citing *Puckett v. U.S. Fire Ins. Co.*, 687 S.W.2d 936, 938 (Tex. 1984)).

fall under j.(6).  The rationale behind exclusion j.(6) "is to protect the insurer from 'attempts to recover funds to correct deficiencies caused by the contractors' questionable performance.'" *Sw. Tank and Treater Mfg. Co. v. Mid-Continent Cas. Co.*, 243 F. Supp. 2d 597, 603 (E.D. Tex. 2003) (citing *T.C. Bateson Constr. Co. v. Lumbermens Mut. Cas. Co.*, 784 S.W.2d 692, 695 (Tex. App. 1989)).  The exclusion "demonstrates the insurers' belief that the cost of not performing well is a cost of doing business and not considered part of the risk sharing scheme for which general liability policies are written." *Id.* (citing *T.C. Bateson*, 784 S.W.2d at 695).  "Thus a contractor cannot recover from the insurer for his own failure to perform his contract, but can recover for damage other than to his own work, whether or not that work is defective." *Id.* (internal quotations and citations omitted).  All the alleged damages other than those involving diminution in value of the surrounding properties involve "property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."  Pl.'s Mot. for Summ J. App. 11.  While Defendants now argue in their motions that the land is basically unfixable,[16] the Underlying Plaintiffs have failed to allege anywhere in the Underlying Petition that the property LBI damaged in excavating the gas pipes and the surrounding debris cannot be restored to their original condition.  In fact, the Underlying Plaintiffs allege the contrary – that they incurred significant expense "to restore the Property to its original state."  *See* Underlying Pls.' Second Am. Pet. ¶ 14.

     The Court therefore holds the damages to the pipes, the foundations, the concrete slabs,

---

[16]*See, e.g.*, Defs. Texas Gas and LBI's Resp. ¶ 19 ("Bella Plaintiffs' claims for debris left on the Property that was 'not the subject of Defendants' work," and the diminution in value to other parts of the Property cannot be 'restored to use' by the 'repair, replacement, adjustment or removal' of the Defendants' work involving gas pipelines and concrete driveways.").

the existence of the piles of debris and the damage to the real property upon which they were located are all barred by exclusions  j.(5) and j.(6).  This leaves, however, the claims for diminished value of the untouched surrounding property.   This land was not the land upon which the Underlying Defendants were "performing operations," therefore, and do not fall under exclusion j.(5) or j.(6).

**2.      Exclusion "l"**

Plaintiff Admiral next points to Exclusion l, which states that the Policy does not apply to:

> "Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard."
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Pl.'s Mot. for Summ. J.  App. 11.

Without delving into the intricacies of this exclusion or the interpretation of any of its terms, the Court holds this exclusion inapplicable because LBI performed the work causing the damages, and LBI was a subcontractor of TGS.  *See* Underlying Pls.' Second Am. Pet. ¶ 10.[17]

**3.      Exclusion "m"**

The only claim left for coverage that has yet to fall under an exclusion is the Underlying Plaintiffs' claim for diminished value of the surrounding property.  Plaintiff Admiral argues that Exclusion m precludes coverage for this claim.  Pl.'s Mot. for Summ J. ¶¶ 12-20 . Exclusion m states that the Policy does not apply to:

> "Property damage" to "impaired property" or property that has not been physically

---

[17]The Court recognizes that Exclusion l may potentially apply to LBI because it is the primary insured and had no subcontractor of its own who performed the work.  However, the Court declines to reach this argument since it holds that all remaining property damage is excluded under Exclusion m.

injured, arising out of:

(1)  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

(2)  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Pl.'s Mot. for Summ. J. App. 11-12.

The Court holds that the diminution-in-value claim for "property damage" is barred by this exclusion.  The property that has diminished in value has not been physically damaged, yet has diminished in value due to the Underlying Defendants' negligence.  Moreover, the damage arises out of the inadequate performance of the Underlying Defendants in turning off the gas to the Property.  *See Mid-Continent Cas. Co. v. Camaley Energy Co., Inc.*, 364 F. Supp. 2d 600, 607-08 (N.D. Tex. 2005) (holding that negligent drilling that resulted in a loss of a leasehold constitutes "a defect, deficiency, inadequacy, dangerous condition" that caused property damage to "property that has not been physically injured" and was thus barred by Exclusion m); *see also Gibson & Assocs.*, 966 F. Supp. at 474-75 (holding financial losses to physically undamaged property due to insured's failure to perform barred under Exclusion m).  Moreover, the exception to the exclusion (loss of use after the Underlying Defendants' work has been put to its intended use) does not apply in the instant case.

In conclusion, despite the fact that an "occurrence" took place giving rise to "property damage" under the Policy, all of the alleged property damage is barred by Policy exclusions.  Accordingly, Plaintiff Admiral has no duty to defend Texas Gas or LBI in the Underlying Suit.  Plaintiff Admiral's Motion for Summary Judgment on this issue is hereby **GRANTED**.

-29-

### E.      Estoppel

Defendants Texas Gas and LBI argue that Plaintiff is estopped from arguing that it has no duty to defend since it assumed coverage in 2007.  Defs. Texas Gas and LBI's Resp. ¶ 21. Defendants Texas Gas and LBI base this claim on the fact that an alleged agent of Admiral stated in a letter to LBI that Admiral "should" defend LBI and that Admiral subsequently billed LBI for its defense.  *Id.*  This hail-mary attempt to maintain coverage does not survive scrutiny.

First, estoppel is a defense that must be affirmatively pleaded.  FED. R. CIV. P. 8(c)(1). Defendants Texas Gas and LBI have not pleaded estoppel in their Answer and the time to amend the pleadings has passed.  *See* Scheduling Order, August 30, 2007.  Nor have Defendants Texas Gas and LBI been given leave of the Court to extend the time to amend their pleadings.

Moreover, it is well-settled Texas law that doctrines of waiver and estoppel cannot be used to create insurance coverage where none exists under the terms of the policy.  *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Kitty Hawk Airways, Inc.*, 964 F.2d 478, 480-81 (5th Cir. 1992) (citations omitted).  There remains, however, a well-established exception to the above-stated rule, known as the *Wilkinson* Rule, which states that:

> if an insurer assumes the insured's defense without obtaining a
> reservation of rights or a non-waiver agreement and with
> knowledge of the facts indicating non-coverage, all policy defenses,
> including those of non-coverage, are waived, or the insurer may be
> estopped from raising them.

*Farmers Texas County Mutual Ins. Co. v. Wilkinson*, 601 S.W.2d 520, 521-22 (Tex. Civ. App. 1980) (citations omitted); *see also Texas Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601, 603 n.1 (Tex. 1988); *Kitty Hawk Airways*, 964 F.2d at 481.

"This rule is based on the 'apparent conflict of interest that might arise when the insurer

-30-

represents the insured in a lawsuit against the insured and simultaneously formulates its defense against the insured for noncoverage.'" *Wilkinson*, 601 S.W.2d at 522 (quoting *Pacific Indemnity Co. v. Acel Delivery Serv., Inc.*, 485 F.2d 1169 (5th Cir. 1973)).  In order for a reservation of rights to be effective, the reservation must be unambiguous; if it is ambiguous, "the purported reservation of rights must be construed strictly against the insurer and liberally in favor of the insured."  *Id.* at 523 (citing *Employers Cas. Co. v. Tilley*, 496 S.W.2d 552 (Tex. 1973)) (other citations omitted).

The Fifth Circuit, in applying Texas law, has stated that the *Wilkinson* exception applies and "trumps the general no-expanded-coverage rule" when the insured can show:

> (1) that the insurer had sufficient knowledge of the facts or circumstances indicating non-coverage but (2) assumed or continued to defend its insured without obtaining an effective reservation of rights or non-waiver agreement and, as a result, (3) the insured suffered some type of harm.

*Kitty Hawk Airways*, 964 F.2d at 481 (citing *McGuire,* 744 S.W.2d at 603 n.1; *State Farm Lloyds, Inc. v. Williams*, 791 S.W.2d 542, 552-53 (Tex. App. 1990)).

Defendants Texas Gas and LBI have failed to satisfy the *Wilkinson* test.  Assuming that Plaintiff Admiral had sufficient knowledge of the facts or circumstances indicating non-coverage, Texas Gas and LBI have failed to demonstrate that Admiral at any time assumed the defense of LBI in the underlying suit.  The two pieces of evidence presented by Defendants are unpersuasive.

First, Texas Gas and LBI refer to a letter written by Mike Pool, of TEI Insurance Agency, Inc., (the underwriters for the Policy) to LBI on December 13, 2006, stating:

> It is my opinion that there is an assumed (but not stated) allegation of negligence against you because of the lawsuit reference to you tearing out newly constructed driveways, slabs and foundations (which under assumption should not by code

have had any gas lines under them).  This is the main reason that I believe, and the underwriting broker believe, that Admiral should defend you.

Defs. Texas Gas and LBI's Resp. Ex. A-5.

This letter is followed by a second letter on the same day stating:

Tom Bartie at Admiral insurance called me yesterday afternoon and said that he had sent your policy and the lawsuit to an independent coverage council in Houston for review, and the attorney had just advised that he did not see any coverage in your policy for the allegations set out in the suit.  He said that he would call you, and would follow up with a letter to you telling you that you needed to have your own attorney file an answer on your behalf for the suit.

I have spent this morning with the underwriting broker that wrote your policy for us, and he is in total agreement with me that there is coverage in your policy and that Admiral should answer and defend on your behalf.  He is going to intercede on your behalf with Mr. Bartie.

*Id.*

These letters do not establish that Plaintiff Admiral assumed LBI's defense in the Underlying Suit.  If anything, they establish the contrary.  First, Defendants Texas Gas and LBI have failed to establish that Mike Pool spoke on behalf of, had the authority to assert, or in any way represented Plaintiff Admiral in his claim that "Admiral should defend you."  Secondly, even if Pool is an agent for Admiral, Pool basically admits that neither he nor the underlying broker have the authority to state definitively whether Admiral will assume LBI's defense.  At most, Pool states that the underlying broker is "going to intercede on your behalf" with Admiral.  Meanwhile, the only Admiral employee referred to directly in the letter stated that LBI is *not* covered.  And that is where this story ends.  These letters, therefore, do not rise to the level of an assumption of a defense, but at most demonstrate hope of coverage by a worker who wants to appease his client.

Defendants next refer to bills they received June 6, and November 1, 2007, stating that LBI owed $5,000 as their deductible with regards to the claims made by Avenida. *See* Defs. Texas Gas and LBI's Resp. Ex. A-6. At first glance, these letters provide more convincing evidence that Admiral has assumed either coverage or the defense of LBI in the Underlying Suit. However, when combined with the previous language of Pool's letters which state Admiral has not assumed coverage, the Court does not find that a reasonable party could rely solely on them as evidence that Admiral assumed their defense. This is particularly true given the fact that at the time of both letters, the instant case for declaratory judgment – in which Plaintiff Admiral is expressly *disavowing* any coverage or duty to defend – was in full swing. In addition, Admiral followed up these bills in both cases with correspondence (before the due date on the bills) showing that the bills were sent to them in error. *See* Plaintiff's Reply to Defs. Texas Gas and LBI's Resp. Ex. A. Given the Pool correspondence, the ongoing instant case, and the contradictory letters, the Court finds the original letters to be unpersuasive evidence of an assumption by Admiral of coverage or an acknowledgment of a duty to defend LBI in the Underlying Suit.[18]

Finally, even assuming that these letters do represent an assumption of coverage or acknowledgment of a duty to defend that Admiral later reneged on, Defendants Texas Gas and LBI have failed to satisfy the third prong of the *Wilkinson* rule. Specifically, they have failed to demonstrate that they have been harmed by Admiral's actions. *See Kitty Hawk Airways*, 964 F.2d at 481.

---

[18]The Court also notes that there has never been any evidence presented by either party that Admiral ever affirmatively stated that it would assume the defense.

Given the foregoing evidence, the Court holds that the *Wilkinson* rule does not apply in the instant case and Admiral is not estopped from denying coverage.

### F.    Admiral's Duty to Indemnify

Finally, Plaintiff Admiral argues that if it has no duty to defend, it has no duty to indemnify. Pl.'s Mot. for Summ. J. 10. The Court disagrees.

The duty to defend and the duty to indemnify are distinct and separate duties. *Cowan*, 945 S.W.2d at 821-22 (citations omitted); *see also King*, 85 S.W.3d at 187. While the duty to defend is triggered by the alleged facts in the underlying petition, the duty to indemnify is triggered by the actual facts establishing liability in the underlying suit. *Id.* (citing *Heyden Newport Chem. Corp.*, 387 S.W.2d at 25); *see also Hydro Tank*, 497 F.3d at 448. Accordingly, "Texas law only considers the duty-to-indemnify question justiciable after the underlying suit is concluded, unless '*the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.*'" *Northfield Ins. Co. v. Loving Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (quoting *Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex.1997) (emphasis in original)).

The Court has held that based on the alleged facts in the Underlying Petition, Plaintiff Admiral has no duty to defend the Underlying Defendants in the Underlying Suit because all the alleged damages are barred by relevant exclusions. Nevertheless, neither party has presented evidence that *any* facts have been conclusively established in the Underlying Suit. It remains possible, then, that facts may later be alleged in subsequent amended pleadings and proven at trial

which establish damages that do not fall within any exclusion.[19]  These facts may thus potentially

trigger Plaintiff Admiral's duty to indemnify.  Ruling on the duty to indemnify might therefore be

premature and "might very well conflict with findings yet to be made in the state court." *Westport*

*Ins.*, 267 F. Supp. 2d at 634.  Moreover, the Court cannot state with certainty that all possibility

is negated that Plaintiff Admiral will "*ever have a duty to indemnify*." *Northfield Ins. Co.*, 363

F.3d at 528 (emphasis in original).

In addition, district courts have the discretion under the Declaratory Judgment Act to

decline to grant relief as to the duty to indemnify.  *See Wilton v. Seven Falls Co.*, 515 U.S. 277,

283 (1995); *see also Northfield Ins.*, 363 F.3d at 536-37; *Westport Ins. Corp. v. Atchley, Russell,*

*Waldrop & Hlavinka, L.L.P.*, 267 F. Supp. 2d 601, 633 (E.D. Tex. 2003).  Declining to

adjudicate a case is particularly appropriate "where parallel proceedings, presenting opportunity

for ventilation of the same state law issues, [are] underway in state court." *Wilton*, 515 U.S. at

290.  In *Wilton*, the Supreme Court held that "the normal principle that federal courts should

adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial

administration." *Id.* at 288.

Any holding this Court makes with regards to Plaintiff Admiral's duty to indemnify

remains contingent on a finding that the Underlying Defendants are liable in the Underlying Suit.

*See Allstate Ins. Co. v. Employers Liab. Assur. Corp.*, 445 F.2d 1278, 1281 (5th Cir. 1971) ("We

---

[19]The Court notes that it is already working off the Underlying Plaintiffs' *Second*
Amended Petition.  How many more times the Underlying Plaintiff will amend their Petition and
thereby change the facts of the case is certainly beyond the ken of this Court.  Moreover, this
Court would be supercilious to expect the state court in the Underlying Suit to close the door on
subsequent amended pleadings simply because this Court has ruled there is no duty to indemnify
based on the allegations in this amended pleading.

have held that no action for declaratory relief will lie to establish an insurer's liability in a policy

clause contest such as the one at bar until a judgment has been rendered against the insured since,

until such judgment comes into being, the liabilities are contingent and may never materialize.")

(citing *Am. Fid. & Cas. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280

F.2d 453 (5th Cir. 1960)).  If the Underlying Defendants are found not liable, for example, any

holding this Court makes on Plaintiff Admiral's duty to indemnify becomes moot.  It is therefore

in the consideration of practicality and wise judicial administration not to rule on Plaintiff

Admiral's duty to indemnify before the Underlying Suit is fully adjudicated, since the state court

proceeding presents an opportunity for ventilation of a key issue for Plaintiff Admiral's duty to

indemnify.  Because there has yet to be any finding of liability in the Underlying Suit that has been

brought to this Court's attention, the Court declines to reach this issue.  *See Lamar Homes*, 501

F.3d 435, 436 (5th Cir. 2007).

 Since there remain no issues that are currently ripe for adjudication, the Court will dismiss

the remainder of the action without prejudice.

## III. CONCLUSION

 For the reasons stated above, the Court holds that the Underlying Petition has adequately

alleged an "occurrence" and "property damage" pursuant to the policy.  Nevertheless, all claims

for "property damage" are barred by relevant exclusions.  The Court therefore holds that Plaintiff

Admiral has no duty to defend the Underlying Defendants in the Underlying Suit.  Accordingly, it

is hereby **ORDERED** that Plaintiffs' Motion for Summary Judgment (**Doc. No. 55**) regarding its

duty to defend be **GRANTED**.  Nevertheless, the Court declines to rule as to whether Plaintiff

Admiral has any duty to indemnify the Underlying Defendants because the Underlying Suit has yet

to be resolved.  Accordingly, Plaintiff Admiral's Motion for Summary Judgment (**Doc. No. 55**) regarding its duty to indemnify is hereby **DENIED**.  This case therefore is hereby **DISMISSED** without prejudice since there are no issues remaining that are ripe for adjudication.

The Clerk shall close the case.

**SO ORDERED**.

**SIGNED** on this 14th day of December, 2007.


KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE